Mr. Justice Grier,
dissenting, delivered the following opinion:
I regret that I am compelled to dissent from the opinion of the majority of the court on all the points raised and decided in this case.
The first question in order is- the jurisdiction of the court to entertain this bill in behalf of the State of Texas.
The original jurisdiction of this court can be invoked only by one of the United States. The Territories have no such right conferred on them by the Constitution, nor have the Indian tribes, who are under the protection of the military authorities of the Gbvernment.
Is Texas one of the United States? Or was she such at the time this bill was filed, or since?
This is to be decided as a political fact, not as a legal fiction. This court is bound to know and notice the public history of the nation.
IfT regard the truth of history for the last eight years, I cannot discover the State of Teaxs as one of these United States. I do not think it necessary to notice any of the very astute arguments which have been advanced by the learned counsel in this case, to find the definition of a State, when we have the subject treated in a clear and common-sense manner, and without any astute judicial *613 abstractions, by Chief Justice Marshall, in the case of Hepburn & Dundass v. Elzey, 2 Cr., 452. As the case is short and clear, I hope to be excused for a full report of it, as stated and decided by the court. “The question,” says Marshall, C. J., “is whether the plaintiffs, as residents of the District of Columbia, can maintain an action in the circuit court of the United States for the district of Virginia. This depends on the act of Congress describing the jurisdiction of that court. The act gives jurisdiction to the circuit courts in cases between a citizen of the State in which the suit is brought and a citizen of another State. To support the jurisdiction in this case, it must appear that Columbia is a State. On the part of the plaintiff, it has been urged that Columbia is a distinct political society, and is, therefore, a ‘State’ according to the definition of writers on general law. This is true; but, as the act of Congress obviously uses the word ‘State’ in reference to that term as used in the Constitution, it becomes necessary to inquire whether Columbia is a State in the sense of that instrument. The result of that examination is a conviction that the members of the American confederacy only are the States contemplated in the Constitution. The House of Representatives is to be composed of members chosen by the people of the several States, and each State shall have at least one Representative. ‘ The Senate of the United States shall be composed of two Senators from each State.’ Each State shall appoint, for the election of the Executive, a number of electors equal to its whole number of Senators and Representatives. These clauses show that the word ‘State’ is used in the Constitution as designating a member of the Union, and excludes from the term the signification attached to it by writers on the law of nations.”
How, we have here a clear and well-defined test by which we may arrive at a conclusion with regard to the questions of fact now to be decided.
*614 Is Texas a State, now represented by members chosen by the people of that State and received on the floor of Congress? Has she two Senators to represent her as a State in the Senate of the United States? Has her voice been heard in the late election of President? Is she not now held and governed as a conquered province hy military force? The act of Congress of March 28,1867, declares Texas to be a “rebel State,” and provides for its .government until a legal and republican State government could be legally established. It constituted Louisiana and Texas the fifth military district, and made it subject, not to the • civil authority, but to the “ military authorities of the United States.”
It is true, that no organized rebellion now exists there, and the courts of the United States now exercise jurisdiction over the people of that province. But this is no test of the State’s being in the Union; Dacotah is no State, and yet the courts of the United States administer justice there as they do in Texas. The Indian tribes, who are governed by military force, cannot claim to be States of the Union. Wherein- does the condition of Texas differ from theirs?
How, by assuming or admitting, as a fact, the present status of Texas as a State not in the Union politically, I beg leave to protest against any charge of inconsistency as to judicial opinions heretofore expressed as a member of this court, or silently assented to. I do not consider myself bound to express any opinion judicially as to the constitutional right of Texas to exercise the rights and privileges of a State of this Union, or the power of Congress to govern her as a conquered province, to subject her to military domination, and keep her in pupilage. I can only submit to the fact, as decided by the political position of the government; and I am not disposed to join in an essay of judicial subtlety to prove Texas to be a State of the Union, when Congress has decided that she is not. It is a question of fact, I repeat; and of fact only. Politically, *615 Texas is not a State in this Union. Whether rightfully out of it or not is a question not before the court, and I am not called on to refute a fact with syllogisms.
But, conceding now the fact to be as judicially assumed by my brethren, the next question is, whether she has a right to repudiate her contracts? Before proceeding to answer this question, we must notice a fact in this case that was forgotten in the argument. I mean that the United States are no party to this suit, and refusing to pay the bonds because the money paid would be used to advance the interests of the rebellion. It is a matter of utter insignificance to the Government of the United States to whom she “makes the payment of these bonds. They, are payable to the bearer. The Government is not bound to inquire into the bona jides of the holder, nor whether the State of Texas has parted with the bonds wisely or foolishly. And although by the reconstruction acts she is required to repudiate all debts contracted for the purposes of the rebellion, tlSs does not annul all acts of the State government during the rebellion or contracts for other purposes, nor authorize the State to repudiate them.
How, whether we assume the State of Texas to be judicially in the Union (though actually out of it) or not, it will not alter the case. The contest now is between the State of Texas and her own citizens. She seeks to annul a contract with the respondents, based on the allegation that there was no authority in Texas competent to enter into an agreement during the rebellion. Having relied upon one judicial fiction, namely, that she'is a State in the Union, she now relies upon a second one, which she wishes this court to adopt, that she was not a State at all during the five years that she was in rebellion. She now sets up the plea of insanity, and asks the court to treat all her acts made during the disease as void.
We have had some very astute logic to prove that judicially she was not a State at all, although governed byther *616 own legislature and executive as “a distinct political "body.”
The ordinance of secession was adopted by the convention on the 18th February, 1861, submitted to a vote of the people, and ratified by an overwhelming majority.
I admit that this was a very ill-advised measure. Still, it was the sovereign act of a sovereign State, and the verdict, on the trial of this question “by battle,” (Prize Cases, 2 Black, 673,) as to her right to secede, has been against her. But that verdict did not settle any question not involved in the case. It did not settle the question of her right to plead insanity and set aside all her contracts, made during the pendency of the, trial, with her own citizens, for food, clothing, or medicines. The same “ organized political body,” exercising the sovereign power of the State, which required the indorsement of these bonds by the governor, also passed the laws authorizing the disposal of them without such indorsement. She cannot, like the chameleon, assume the color of the Object to which she adheres, and ask this court to involve itself in the contradictory positions that she is a State in the Union, and was never out 'of it, and yet not a State at all for four years, during which she acted and claims to be “an organized political body,” exercising all the powers and functions of an independent sovereign State. Whether a State defacto or de jure, she is estopped from denying her identity in disputes with her own citizens. If they have not fulfilled their contract, she can have her legal remedy for the breach of it in her own courts.
But the case of Hardenberg differs from that of the other defendants. He purchased the bonds in open market, bona fide, and for a full consideration. How, it is to be observed that these bonds are payable to bearer, and that tins court is appealed to as a court of equity. The argument to justify a decree in favor of the Commonwealth of Texas, as against Hardenberg, is simply this: These bonds, though *617 payable to bearer, are redeemable fourteen years from date. The government has exercised her privilege of paying the interest for a term without redeeming the principal, which gives an additional value to the bonds. Ergo, the bonds are dishonored. E-go, the former owner has a right to resume possession of them, and reclaim them from a bona fide owner by a decree of a court of equity.
This is the legal argument, when put in the form of a logical sorites, by which Texas invokes our aid to assist her in the perpetration of this great wrong.
A court of chancery is said to be a court of conscience; and however astute may be the argument introduced to defend this decree, I can only say that neither my reason nor my conscience can give assent to it. Of course, I am justly convicted by my brethren of an erroneous use of both; but I hope I may say without offense, that I am not convinced of it.